UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN GILBERT,

    Petitioner,

v.                                               Case No. 2:09-cv-188
                                               HON. ROBERT HOLMES BELL

GREGORY MCQUIGGIN,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Steven Gilbert filed this petition for writ of habeas corpus challenging the validity of his state court conviction and sentence. Petitioner is serving a life sentence imposed by the Clinton County Circuit Court on September 13, 2005, after Petitioner pleaded guilty to second-degree murder (MCL 750.317). The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:

    I.    The trial court erred in failing to allow Petitioner to withdraw his plea to second-degree murder because it was involuntary. Specifically, the prosecutor's agreement to dismiss the charge of first-degree murder became illusory because the trial court imposed a life sentence and promised to veto parole.

    II.    Petitioner was denied the right to the effective assistance of counsel because his counsel promised a sentence at the low end of the guidelines and because his counsel did not present mitigating evidence or character witnesses at sentencing

    III.    Petitioner is entitled to resentencing where the sentencing guidelines were scored based upon facts not submitted to a jury and found beyond a reasonable doubt.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

    The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner first claims that his guilty plea was not voluntarily, knowingly or intelligently made because the prosecutor's agreement to dismiss the charge of first-degree murder was ultimately illusory. A guilty plea is valid if it is entered voluntarily and intelligently as determined under the totality of the circumstances. See *Brady v. United States*, 397 U.S. 742, 749 (1970). The United States Constitution requires that a defendant be informed of all of the direct consequences of his plea. *See Brady*, 397 U.S. at 755. A review of the plea hearing fails to provide any support for petitioner's claim that his guilty plea was not knowingly and intelligently made.

The constitutional validity of a guilty plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir.), *cert. denied*, 504 U.S. 1222 (1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.), *cert. denied*, 502 U.S. 816 (1991).

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id*. A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon

petitioner a "heavy burden" to overturn the state findings. *Id*. at 328; see *Parke v. Raley*, 113 S. Ct. 517, 523 (1992).  In the present case, after a thorough interrogation of petitioner, the state judge found that petitioner's plea of guilty was entered knowingly and voluntarily.

The plea hearing transcript establishes that Petitioner was aware of all of the consequences of pleading guilty.

> [THE COURT]: As I understand the total plea agreement, you're going to plead guilty to the amended charge of Second Degree Murder, with the understanding that the charge of Open Murder that has been filed in the case would be dismissed, and any other charges that could arise out of this incident that could be filed will not be filed, and the prosecutor would dismiss the Habitual Information that was filed in this case. That's my understanding of the full plea agreement; do you understand that?
>
> [PETITIONER]: Yes, sir.
>
> [THE COURT]: That reduces the possible penalty to up to life in prison from mandatory life in prison with no parole; do you understand that?
>
> [PETITIONER]: Yes, sir.
>
> [THE COURT]: Okay. Actually, you were charged with Open Murder, which is a life offense, but the prosecutor's theory was that you committed an offense of First Degree Murder, so that's what you're getting rid of; do you understand that?
>
> [PETITIONER]: Yes, sir.

(Plea Transcript , docket # 13, at 5-6).  It is clear that Petitioner was aware that his maximum possible sentence was life in prison when he entered his guilty plea.

Petitioner stated under oath that he was pleading guilty freely and voluntarily and that it was his own decision, and he was pleading guilty because he was guilty.  Further, Petitioner admitted his guilt.  The Court carefully questioned Petitioner regarding his motivation and understanding of entering a guilty plea.

>[THE COURT]: Understanding the full plea agreement in this case, is it your decision to plead guilty pursuant to this plea agreement?
>
>[PETITIONER]: Yes.
>
>[THE COURT]: Has anyone forced you or threatened you, in any way, to get you to plead guilty?
>
>[PETITIONER]: No, sir.
>
>[THE COURT]: Anyone made any promise that would get you to plead guilty other than what's been stated here?
>
>[PETITIONER]: No, sir.

(Plea Transcript, docket # 13, at 6).

>[THE COURT]: Are you pleading guilty to this charge of Second Degree Murder because you are guilty?
>
>[PETITIONER]: Yes, sir.
>
>[THE COURT]: Are you pleading guilty freely and voluntarily?
>
>[PETITIONER]: Yes, sir.
>
>[THE COURT]: Is this your own decision?
>
>[PETITIONER]: Yes, sir.

(Plea Transcript, docket # 13, at 10). Petitioner clearly entered his plea knowingly and voluntarily. Therefore, in the opinion of the undersigned, Petitioner has failed to show that his plea was involuntary.

Petitioner also maintains that his plea became illusory because he ultimately received a non-parolable life sentence for second-degree murder, which is the same penalty for first-degree murder. (Petition, docket #1, at 4). To the extent that petitioner argues that the trial court erred by not establishing a proper factual basis for his guilty plea, petitioner has failed to raise a cognizable habeas claim. A state court is not required under the Constitution to establish a factual basis for a

guilty plea. *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975). "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).

The plea hearing transcript does show that petitioner's underlying plea was voluntary. Petitioner stated, under oath, that no one had made him any other promises and that no one had threatened him to plead guilty. (Plea Transcript , docket # 13, at 7). Then, Petitioner was informed of the following:

> [THE COURT]: Have you had a chance to discuss that you're doing fully with Mr. Blackmond?
>
> [PETITIONER]: Yes, sir.
>
> [THE COURT]: Are you satisfied with his representation?
>
> [PETITIONER]: Yes, sir.
>
> [THE COURT]: Are you on probation or parole right now.?
>
> [PETITIONER]: No, sir.
>
> [THE COURT]: Do you understand that the maximum penalty that could be imposed for the offense you're pleading to is up to life in prison?
>
> [PETITIONER]: Yes, sir..
>
> [THE COURT]: Understanding that that's the maximum possible penalty, is it still your decision to plead guilty to that charge?
>
> [PETITIONER]: Yes, sir.

(Plea Transcript , docket # 13, at 6-7). A further review of the transcript shows that Petitioner was aware of and understood the possible sentence consequences. Petitioner understood that he could receive a life sentence. Therefore, Petitioner's claim of an illusory plea bargain is unsupported.

In Petitioner's second claim for habeas corpus relief, he asserts that he was denied the effective assistance of counsel based on his trial attorney's promise that he would receive a non-life sentence at the low end of the scoring guidelines[1] and that his counsel failed to present mitigating evidence or character witnesses at sentencing. In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had

---

[1]This argument by Petitioner is contradicted by his statement at the plea hearing:

> [THE COURT]: Anyone made any promise that would get you to plead guilty other than what's been stated here?
>
> [PETITIONER]: No, sir.

no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999).

In this case, Petitioner has failed to prove that trial counsel's errors were so severe as to constitute constitutional ineffectiveness. The trial counsel's calculation of the sentencing guidelines were not such that they affected the outcome of the court's proceedings. The transcript of the plea hearing establishes that Petitioner was made aware, by the Court, of all of the consequences of pleading guilty. Petitioner understood that his maximum possible sentence was life in prison. As a result of entering into the plea agreement, the Prosecutor agreed to drop the open murder charges, not charge CSC I, and drop the habitual offender charges in the supplemental information. It is clear that there were reasonable strategic motives for counsel's advise and decisions. Trial counsel exercised a "reasonable professional judgment and sound trial strategy" by negotiating the plea agreement and a providing petitioner with a possibility of a lessor sentence under the guidelines. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The transcript of the plea hearing shows that petitioner understood the entire plea agreement. He said he understood the

sentence consequences: "That reduces the possible penalty to up to life in prison from mandatory life in prison with no parole." (Plea Transcript , docket # 13, at 7). Therefore, Petitioner was fully aware of his maximum possible sentence in pleading guilty and any estimation by the trial counsel would not have changed the maximum possible sentence nor the actual sentence entered by the Court. In the opinion of the undersigned, Petitioner's reliance upon the low end scoring guidelines does not constitute ineffectiveness of counsel.

Petitioner argues that his counsel did not present mitigating evidence or character witnesses at sentencing. The trial court rejected this claim in Petitioner's Motion to Withdraw/Motion for Resentencing (Docket #15). The trial court found that it was within counsel's discretion to present character witnesses at sentencing. Petitioner has a history of violent assaultive conduct and had been in prison for assaulting his wife before he committed this murder. Petitioner admitted to picking up the female child victim at her home, driving her in his car to a secluded area, strangling her, and leaving her body along the roadside in a wooded area. While petitioner wanted "his employer" and "other individuals" contacted so they could testify regarding petitioner's character, petitioner has not presented any evidence to show that their testimony could have presented mitigating evidence or helped him receive a more favorable sentence. In the opinion of the undersigned, the trial court did not make an unreasonable decision that counsel was effective during sentencing and that counsel did not err by failing to bring character witnesses and mitigating evidence. Petitioner has failed to show that any mitigating factors existed or that any specific character witnesses could have caused the court to give him a more favorable sentence. In fact, petitioner has not presented in support of this petition any character witness by name or any affidavits from a character witness, or any mitigating evidence that could have been presented during sentencing. Petitioner has failed to show that he is entitled to a hearing on this issue.

In this case, the transcript of the plea hearing shows that Petitioner, through questioning by the trial court, admitted to his culpability in the charged offenses and fully accepted responsibility.

> [THE COURT]: Mr. Gilbert, the charge . . . just read is commonly called Second Degree Murder. Do you understand that charge?
>
> [PETITIONER]: Yes, sir.
>
> [THE COURT]: How do you plead, sir?
>
> [PETITIONER]: Guilty.
>
> [THE COURT]: What did you do that makes you guilty?
>
> [PETITIONER]: I choked Samantha Detzler.
>
> [THE COURT]: You choked Samantha Detzler?
>
> [PETITIONER]: Yes.
>
> [THE COURT]: Did that occur on or about February 19th of this year?
>
> [PETITIONER] Yes, sir.
>
> [THE COURT]: And, did that occur in a location of DeWitt Township, Clinton County?
>
> [PETITIONER]: Yes, sir.
>
> [THE COURT]: As I understand it, this is out on a gravel road someplace?
>
> [PETITIONER]: Yes, sir.
>
> [THE COURT]: All right. This occurred in your vehicle?
>
> [PETITIONER]: Yes, sir.
>
> [THE COURT]: And, by choking Samantha Detzler, you caused her death?
>
> [PETITIONER]: Yes, sir.

> [THE COURT]: Is there anything that you and I have discussed today that you don't understand?
>
> [PETITIONER]: No.
>
> [THE COURT]: Understanding all that we've discussed, is it still your decision to plead guilty to this charge?
>
> [PETITIONER]: Yes.

(Plea Transcript , docket # 13, at 11-12). In the opinion of the undersigned, Petitioner has failed to establish that he received ineffective assistance of counsel.

Finally, petitioner claims that the trial court erred in scoring the guidelines based on facts not submitted to a jury and found beyond a reasonable doubt. Generally, errors in sentencing do not present a federal issue cognizable in habeas corpus proceedings. *See Johnson v. Arizona*, 462 F.2d 1352 (9th Cir. 1972); *Pringle v. Beto*, 424 F.2d 515 (5th Cir. 1970). To the extent that petitioner challenges the correctness of his sentence on the basis of state law, petitioner is not entitled to habeas review unless there has been a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792 (6th Cir.), *cert. denied*, 496 U.S. 929 (1990). Petitioner relies on *Blakely v. Washington*, 542 U.S. 296 (2004), arguing that any increase in a sentence imposed based on facts not submitted to a jury is unconstitutional. However, the issue presented in *Blakely* was the constitutionality of a statute which set out a guideline range of sentences, but permitted a court to impose a sentence in excess of those guidelines based on facts not submitted to a jury. In Michigan, a court does not have the authority to exceed the statutorily authorized sentence, and the sentences imposed here by the trial court do not exceed the statutorily authorized ranges. Therefore, *Blakely* is not applicable.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Petitioner has failed to establish that there was insufficient evidence presented at trial to support his conviction. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                              /s/ Timothy P. Greeley  
                                              TIMOTHY P. GREELEY  
                                              UNITED STATES MAGISTRATE JUDGE

Dated: July 14, 2011